109 F.Supp. 675 (1951)
LOCAL 1104, UNITED ELECTRICAL, RADIO & MACHINE WORKERS OF AMERICA (UE)
v.
WAGNER ELECTRIC CORP. et al.
No. 6995.
United States District Court E. D. Missouri, E. D.
December 12, 1951.
On Motions December 22, 1952.
*676 Morris J. Levin, of St. Louis, Mo., for plaintiff.
Lewis, Rice, Tucker, Allen & Chubb, and Robert T. Burch, of St. Louis, Mo., for defendant Wagner Electric Corp.
Robert A. Roessel, of St. Louis, Mo., for interpleaded defendant, Local 1104, etc.
HULEN, District Judge.
By this suit plaintiff and interpleaded defendant, unincorporated unions, lay claim to funds withheld from employees of, and by, the corporate defendant, under individual check-off authorizations of the employees. Defendant employer takes an impartial attitude in the controversy.[1] Jurisdiction arises under Section 185, Title 29 U.S.C.A., 61 Stat. 156.
Local UE is the union exclusively for the employees of defendant. It received a charter in 1937 from the national unincorporated organization, United Electrical, Radio and Machine Workers of America.[2] Employees of the defendant, by choice, could, and with exception of a small minority did, become members of Local UE, and without question were members until November, 1949.
The history of this law suit starts in 1949. At that time the UE National was affiliated with the Congress of Industrial Organizations.[3] On November 2, 1949, at its national convention, the CIO expelled the UE National from its affiliation. Meetings of some of the members of Local UE were held soon after the expelling action of the CIO. Interpleaded Local IUE claims that as a result of action taken at these meetings it succeeded to all the contract rights with the employer, theretofore enjoyed by Local UE. A charter was issued to Local IUE by the national *677 union, International Union of Electrical, Radio & Machine Workers, CIO. This national union was affiliated with the CIO.
Issues to be determined in this case are: (A) Under the constitution and by-laws of the UE National and Local UE, did the action of the CIO in expelling the UE National affect the legal status of the UE Local with the UE National? (B) Was the action taken at the meetings of members of Local UE ineffectual for purpose of giving Local IUE, instead of Local UE, the right to receive check-off dues from the employer, because not in accord with the national or local by-laws? (C) Are the funds in dispute controlled by individual contracts between the employees and the employer, independent of points (A) and (B)?

(A)
The CIO came into being with a constitution and by-laws in 1939. UE National and Local UE were organized prior to the CIO. It follows that at their inception neither the constitution nor by-laws of UE National or Local UE contained any reference to CIO. They were not thereafter amended to give any recognition to the CIO. At some time, on an identifying page of a pamphlet, containing a copy of the constitution of UE National, there was printed"Affiliated with the Congress of Industrial Organizations". By what authority it was put there does not appear. It cannot be considered as part of the document because it does not appear in it. The constitution and charter of Local UE has an affirmative declaration of its affiliation with UE National and subservience to the constitution, by-laws and policies of UE National.
Members of a voluntary unincorporated association are presumed to know the terms of their constitution and by-laws. The constitution and by-laws of an unincorporated association constitute a contract between the members, and between the members and the association. This rule applies to and controls property rights, absent some exceptional circumstance. The trade union parties to this suit are voluntary, unincorporated associations. 63 C.J. 662; Hall v. Morrin, Mo.App., 293 S.W. 435.
After the UE National affiliated with the CIO, such affiliation was used in some instances, by organizers, to induce and secure membership in Local UE. Some of those joining Local UE after the event of affiliation did so on that basis. Other organizers considered the affiliation helpful. It is impossible to determine from the record the extent of influence of the affiliation on membership. Opinions have doubtless changed on the part of some of the union leaders and members since the CIO expelled the UE National. The extent of the change is a matter of speculation. Present members of the local who joined before the affiliation of UE National with the CIO could not have joined because of such affiliation. The UE National during such period conferred and had relations with the American Federation of Labor. We conclude there is no evidence upon which it can be determined with any degree of accuracy how many present members of Local UE joined because UE National was affiliated with the CIO. Aside from the contractual relationship between Local UE and UE National, there is no evidence that expulsion of the national union by the CIO may have been contemplated prior to the time of the expulsion. Therefore, what effect such expulsion would have on locals was not considered prior to the event.
Expulsion of the UE National from the CIO in November, 1949, did not of itself change the relation and legal status of Local UE with UE National.

(B)
As we understand the position of the interpleaded defendant, Local IUE, with regard to the proceeding which took place in the meetings of Local 1104, and their effect on the issues of this suit, it is that after those meetings Local IUE became the only legal Local 1104. In its brief we find the conclusion stated
"It is clear that Local 1104 on November 14-16, 1949, was exactly the same Local 1104 as it was a week previous. The only thing that happened was that it changed its identification *678 from UE to IUE. The Local as a labor organization realistically continued from the moment it received its charter in 1937 down to the present, * * * Local 1104 was a continuing entity * * * and was legally entitled to demand that Wagner Electric Corporation consider it as such and that all the rights provided by the existing contract were the property of * * * Local 1104 IUE."
Following expulsion of UE National by the CIO there was issued a charter by International Union of Electrical, Radio and Machine Workers, CIO to Local IUE on November 9, 1949. The Local UE set a series of meetings to be held, as the regular monthly meeting. Meetings were set to accommodate shifts and location of employer's factories as follows:
"Night shift workers, 2nd Monday of the month at 2 P.M. (Nov. 14, 1949)
"Day shift workers, 2nd Monday of the month at 8 P.M. (Nov. 14, 1949)
"Office workers, groups B and C, 2nd Tuesday of the month at 8 P.M. (Nov. 15, 1949)
"Edwardsville, two meetingsone for day shift and one for night shift (Nov. 16, 1949)
"Mt. Vernon (Nov. 10, 1949)"
At the meeting of the "night shift workers" a vote was taken on the question "Do you want to remain with UE?" The recorded vote was 231 "No" and 184 "Yes". The approximate eligible membership for this meeting was 1500. What advance notice was given of the subject-matter of the motion voted on does not appear.
The "day shift workers" held their meeting. At this meeting a motion was submitted 
"In order to remain within the CIO, I move:
"1. That all funds, property and contract of Local 1104 remains with the majority of members.
"2. That an Administrative Committee of five (5) be elected to handle all of the affairs of the Local until a new charter is issued and a new election held.
"3. That the Administrative Committee be empowered to take all steps necessary, including legal actions, to carry out the instructions of the Membership.
"4. That we accept the call to the Convention of the International Union of Electrical, Radio & Machine Workers, C.I.O.
"5. That we elect delegates to attend the Convention of the International Union of Electrical, Radio & Machine Workers, C.I.O. to be held in Philadelphia, Pennsylvania starting November 28, 1949."
This was a turbulent meeting. If the ruling of the chairman of the meeting is to be taken as final, on a show of hands, the motion was declared adopted. Approximately 4,000 members were eligible to vote at this meeting. Witnesses at this trial estimated the attendance, ranging from a low of 1,500 to a high of 3,500.
"Office workers, groups B and C", held their meeting. The same motion as was presented to the day shift workers was submitted. One hundred and thirty-four members were present and all voted for the motion. Employees eligible to vote were estimated at 350.
"The Edwardsville unit" held its meeting and voted to table the motion. Thirty-two members were present and 150 was the approximate number eligible to vote.
"At Mt. Vernon" the vote was on a motion"Do you want to remain with the UE?" Here the 91 members present voted Yes.
It is the action of these meetings upon which Local IUE, the interpleaded defendant, bases its conclusion that "Local 1104 * * * changed its identification from UE to IUE" and that Local 1104 IUE since said meetings is the local in the contracts with the employer and entitled to check-off dues of the employees. In substance Local IUE takes the position there are not two locals 1104, but that it is the one and only Local 1104. Plaintiff charges that because *679 of certain by-law provisions the action of the various meetings were ineffectual to cause such change.
Before going to the by-law provisions we consider what the various meetings of members voted on. Interpleaded Local IUE has construed the actions taken very broadly, to say the least. Assume that a vote of "No" on the motion "Do you want to remain with UE?" should be construed as a vote for the five paragraph resolution, to secure uniformity in votedo the conclusions of interpleaded defendant follow? Local IUE argues the members all knew what they were voting on. We can only determine the purpose of the members from the wording of the motions voted on. Paragraph "1" of the five-paragraph resolution reads"That all funds, property and contract of Local 1104 remains with the majority of members". Paragraph 1 is the only specific expression of the members (voting at some of the meetings) containing any attempt to dispose of the subject-matter of this suit. Paragraphs 2 and 3 go to procedure for carrying into effect paragraph 1. As we read paragraph 1 it is plain. It was doubtless written with deliberation and care and before the meeting at which it was first presented. Taking words in their plain and ordinary meaning, a member hearing it would be presumed to understand that a majority of the members of Local 1104 were expected to control the disposition of the property of the local. And not a majority of those voting at a regular meeting. Sound arguments could be presented for the reasonableness of such a position, independent of by-laws. Here we see action being taken on a far-reaching resolution that goes to the very heart of the union and its members individually. There is no evidence of any advance notice that the subject was to be voted on at the meeting. There was a total membership of between five and six thousand eligible to vote. Each had a proportionate interest in the property of the Local. Those eligible to vote by groups are as follows "estimated" for the record:

Night shift workers ........ 1500 members
Day shift workers .......... 4000 members
Office Workers, Group B
 & C ...................... 350 members
Edwardsville Unit .......... 150 members
Mt. Vernon Unit ............ 91 "voted No"

Their vote as near as we can determine from the record is as follows:

 Total Members
 estimated to
 For the 5 par. have right to
 motion Against vote
Night shift workers 231 184 1500
Day shift workers 1751[*] 1749 4000
Office workers
 Groups B & C 134 350
Edwardsville 32 150
Mt. Vernon 91 91[**]
 ______ _____ _____
 2116 2056 6091

Giving Local IUE the benefit of the record in all cases, we find that in no case did a majority entitled to vote, that is "the majority of the members", ratify the resolution. Local IUE does not claim a majority of members ever ratified the five point resolution, or by inference ratified it by voting on something else. It only claims a majority of those voting at the five meetings in the aggregate. The *680 affirmative vote represents approximately one-third of the membership. We conclude according to the plain wording of paragraph 1 of the five paragraph resolution, no change was thereby effected in the "funds, property and contract of Local 1104" by virtue of the meetings of the Local held between November 10th and 16th, 1949.
The argument of the interpleaded defendant that there is but one Local 1104 and that it is Local IUE we find without substance. How can such a claim be made in the face of that part of the record which shows a National Labor Relations Board election held on February 27, 1950? Employees of employer eligible to vote at that time were 5815. At this election 2837 employees voted affiliation with Local 1104 IUE; 1863 for Local 1104 UE. As a result of this election one group, technical and professional employees, voted in favor of Local 1104 UE and was by the NLRB certified as the bargaining agent for that group. It would be a paradoxical finding if this Court now said that the NLRB was certifying as a bargaining agent, a local that had no existence.
Comparing the procedure taken at the meetings of the membership, upon which Local IUE relies, with the constitution and by-laws of the Local UE governing such procedure, we find the affairs of the Local are handled by an Executive Board of fifteen elected from the membership. By paragraph 2 of the five-paragraph resolution the business affairs of the Local were taken away from the Executive Board and placed in "an Administrative Committee of five (5) * * * [to] be elected to handle all of the affairs of the Local until a new charter is issued and a new election held." We find no authority in the constitution sanctioning this motion or action under the motion. On the contrary it is in conflict with the union constitution.

(C)
This is a suit in which the employer having in its possession funds resulting from check-off membership dues in Local 1104, plaintiff and the interpleaded defendant seek a judgment awarding those funds on the basis of each being the contracting Local Union 1104. The funds do not arise from any contract between Local 1104 and the employer regardless of who the Local now is. They result from individual authorizations of the employeesa contract between each employee and the employer, subject to cancellation by the employee. There was, as of the time here involved, no contract between any Local 1104, and the employer, to check off any membership dues of the employees, and pay them to a union. The employer did so solely by virtue of an assignment executed by the employee and delivered to the employer. The employer would have no right to make any deduction for membership dues absent such assignment. Neither of the claimants is entitled to any dues deductions, absent an assignment in its favor.
With the foregoing conclusion as a premise the solution of this controversy seems simple. The dues in controversy represent deductions made by the employer during the months of November and December, 1949 and January, 1950. Admittedly certain employees had assignments in the hands of the employer during that period, by which their dues were checked off, and such retained dues were assigned to plaintiff. Certain of these employees at some time during the three-month period revoked the assignment. As they had a right to do. Some or all of such employees at time of executing such revocations made a new assignment of check-off dues to the interpleaded defendant. This they had a right to do.
Plaintiff is entitled to all dues which the employer deducted and now holds under assignments to plaintiff which were effective at the time payment was made to the employee of the balance of his wages after the deduction of the portion assigned to plaintiff. Interpleaded defendant is entitled to all dues which the employer deducted and now holds under assignments to such defendant which were effective at the time payment was made to the employee of the balance of his wages after the deduction of the portion assigned to interpleaded defendant.
*681 Certain employees executed revocations and new assignments to Local IUE and intrusted them to Local IUE for delivery, but such assignments were not delivered to the employer by the union because it was unable to finance delivery in accord with the original assignment terms. As between plaintiff and the interpleaded defendant, as to this class of assignments, they should be given effect. If the employer holds any funds that would have been controlled by such undelivered assignments under this ruling if they had been delivered in due course, then as to such funds they will be controlled by such undelivered assignments.
The employer has filed an accounting of all check-off dues held by it. The parties agree to its correctness. Let judgment be prepared and submitted in accord with this memorandum.

On Motions.
After trial and entry of judgment, defendant Local 1104, International Union of Electrical, Radio & Machine Workers, C.I.O.,* on motion moves for dismissal of this action on the ground the Court is without jurisdiction.[1] No further attack is made on disposition of the case on its merits.
The case was originated by Local 1104, United Electrical, Radio & Machine Workers of America** filing suit against defendant Wagner Electric Corporation.*** Plaintiff pled a case under the Taft-Hartley Act or the Labor Management Relations Act of 1947. 29 U.S.C.A. § 152. The controversy, evidenced by the complaint, was that defendant employer had breached its collective bargaining agreement with plaintiff by failure to pay over to plaintiff checkoff dues of its employees, members of plaintiff union, as provided in the collective bargaining agreement between Local UE and the employer. The terms of the collective bargaining agreement were set forth in the complaint, followed by an allegation
"that since the said 31st day of October, 1949 defendant has checked off the said dues and initiation fees of the employees covered by the collective bargaining agreements but has failed and refused to remit the same to plaintiff; that plaintiff has at various times since the 31st day of October, 1949 demanded that the defendant remit and pay over the aforesaid fund to the duly designated officer of plaintiff but defendant has consistently failed and refused to remit the same; that plaintiff is and has continued to be the certified collective bargaining representative of the employees covered by the collective bargaining agreements aforesaid and is entitled to the funds checked off by the company pursuant to the terms of the said contracts."
The employer, by answer, admitted the averments of the complaint, except violation of the collective bargaining contract. Included in the responsive pleading was a counterclaim for interpleader, in which the employer set forth that it had deducted and retained check-off dues of its employees but that Local IUE was demanding payment to it of such check-off union dues as well as plaintiff Local UE, and the employer was unable to determine which union was entitled to the money represented by the union dues. The counterclaim for interpleader sought an order that Local IUE be made a party defendant, that the two unions be required to interplead the funds, and that the employer be discharged. The employer paid into the registry of the Court a sum represented by it to be the amount of check-off dues then in its possession. Local IUE was served with summons in response to an order made on the interpleader counterclaim. Local IUE filed answer to the complaint, admitted the case was originated under the Taft-Hartley Act, 29 U.S.C.A. § 141 et seq., and after alleging facts upon which it based a claim to all check-off dues by virtue of an inter-union reorganization, then the pleading of Local IUE recited:
"9. This defendant further states that under the terms of the collective *682 bargaining agreements, Article 2 thereof, plaintiff would not be entitled to said union dues so checked off for those employees who are not members of Local 1104, UE."
In answer to counterclaim for interpleader of the employer, interpleaded Local IUE pled:
"7. This defendant admits that Local 1104, International Union of Electrical, Radio & Machine Workers, C.I.O. claims to have succeeded to the rights under said collective bargaining agreements with Wagner Electric Corporation and has demanded that all sums withheld and deducted as alleged in Paragraph 14 be paid to it by defendant Wagner Electric Corporation."
Local IUE filed an amended pleading in which it was again admitted that the cause originated under the Taft-Hartley Act; also the collective bargaining agreement as pled in the complaint, that the employer had refused to pay the dues to plaintiff UE, and reasserting its claim to all check-off dues as the union named in the collective bargaining contract.
Plaintiff UE replied to the counterclaim for interpleader. Pertinent to the present issue, this pleading recites:
"5. For reply to Paragraph 11 plaintiff states that it was at all the times herein mentioned the same labor organization which was party to the collective bargaining contracts with the defendant; that the plaintiff did not alter or in any way change its status by affiliation or lack of affiliation with the Congress of Industrial Organizations, hereinafter referred to as the CIO; that the CIO was not at any time a party to any of said collective bargaining contracts between plaintiff and defendant, and at no time had any interest in or rights thereunder; that the membership of defendant's employees in the plaintiff Union was only with the plaintiff Union and United Electrical, Radio & Machine Workers of America, and that said employees who were members of plaintiff were at no time individually members of the CIO; that the CIO at no time participated in the execution or performance of nor was it a party to any of the contracts executed between the plaintiff and defendant; that the plaintiff did not succeed to the rights of any prior or other organization, but at all times herein mentioned was and remained the same labor organization which executed contracts with defendant, and at all times retained the rights contracted for by it in executing its collective bargaining agreements with the defendant, including the rights to receive check-off of dues pursuant to Article 2 of said contracts.
* * * * * *
"10. For further reply plaintiff states that Local 1104 International Union of Electrical, Radio & Machine Workers CIO has no claim in or to the subject matter of this action or in or to any of the moneys or funds retained by the defendant pursuant to its contracts with the plaintiff and the check-off authorization cards filed with it.
"Wherefore, plaintiff prays for judgment against the defendant in the amount of $26,757.00 in addition to the sums retained by the defendant as set out in Paragraph 10 of its Counterclaim for Interpleader, together with its costs in this action."
With the record in this state all parties filed a stipulation as follows:
"It is hereby stipulated and agreed by and between all the parties in the above entitled cause, by their respective attorneys, (1) that an order may be entered herein providing that, upon the deposit into the Registry of this Court of the sum of $30,592.50 by Defendant Wagner Electric Corporation, said Defendant Wagner Electric Corporation shall be discharged from all liabilities arising out of the above entitled cause and (2) that the claims of the Plaintiff and the Defendant, Local 1104, International Union of Electrical Radio & Machine Workers, C.I.O., or either of them, asserted against the Defendant Wagner Electric *683 Corporation in this cause, shall thereafter be against the funds so deposited into the Registry of the Court by said Defendant Wagner Electric Corporation."
Based on the stipulation, the Court made the following order:
"Pursuant to stipulation and agreement of counsel for the respective parties, it is Ordered and Adjudged, that upon Defendant Wagner Electric Corporation depositing into the Registry of this Court the sum of $30,592.50, Defendant Wagner Electric Corporation shall be discharged of all liabilities arising out of this cause; and it is Further Ordered that upon such deposit being made, the claims of the Plaintiff, Local 1104, United Electrical, Radio & Machine Workers of America, and Defendant, Local 1104, International Union of Electrical Radio & Machine Workers, C.I.O., or either of them, asserted against said Defendant Wagner Electric Corporation in this cause shall thereafter be against the funds so deposited into the Registry of the Court by Defendant Wagner Electric Corporation."
Local IUE having been adjudged a minor portion of the fund represented by the check-off dues, now takes the position that in disposing of the case the collective bargaining agreement did not control the court's ruling, that it is based on an "inter-union dispute as to who was entitled to certain funds held by the employer." Interpleaded IUE in its motion states that defendant employer never denied its contract liability but rather sought to protect itself by having the Court determine the proper party to whom the funds should be paid. The section of the Taft-Hartley Act upon which plaintiff founds jurisdiction reads as follows:
"§ 185. Suits by and against labor organizationsVenue, amount, and citizenship
"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."
The issue on jurisdiction turns on whether the "counterclaim for interpleader," the stipulation order made under it, and the finding by the court nullifies the jurisdiction theretofore acquired under the Taft-Hartley Act.
There can be no question that the complaint states a case giving this Court jurisdiction. The answer of the employer put in issue the charge of plaintiff that the employer had violated its collective bargaining agreement with plaintiff. Up to the time this suit was initiated defendant employer was collecting check-off dues and at the time the suit was initiated held a large sum of money due the union named in its collective bargaining agreement. Under the terms of the collective bargaining agreement the employer had no right to hold these dues and such act on his part was a breach of the contract. Prior to this suit being initiated the employer had taken no steps to have the controversy settled as to which union was entitled to the check-off dues. This Court in deciding the case on its merits held that the employer's right to check-off dues of the union from pay due its employees arose on execution of individual assignments but ended on revocation of such assignments by the individual employees. Rights of the union in such funds, or of check-off dues, as the result of the execution of assignments, cannot be divorced from the collective bargaining contract between the employer and the union. Article 2 of the contract reads as follows:
"The Company for said Employees who are Union members, shall deduct from the first pay of each month the Union membership dues for the previous month and promptly remit the same to the duly designated officer of the Union. The initiation fee of the Union, if any, shall be deducted by *684 the Company and remitted to the duly designated officer of the Union in the same manner as dues collected. Provided, however, that the Company shall not make any such deductions or remittances unless the Company has received from each Employee, on whose account such deductions are made, a valid written assignment, in a form approved by the Company, which shall not be irrevocable for a period of more than one year, or beyond the termination of this agreement, whichever occurs sooner."
Each of the unions claiming these checkoff dues must go to the collective bargaining agreement to find any basis for such claims. The employer, being in the position of a violater of the collective bargaining contract, even though only a technical one, after this suit was filed chose a safe and simple way of divesting itself of responsibility of the matter. Under Rule 22, Federal Rules of Civil Procedure, 28 U.S. C.A., the employer, being exposed to double liability, filed its answer and counterclaim of an interpleader action, and under Rule 67, Federal Rules of Civil Procedure, paid the amount of check-off dues in its custody into the registry of the court and by order of court was relieved from any further effort in the case. Thereafter the case was a contest between the opposing unions. Each union, by virtue of certain circumstances, claimed to be entitled to the fund under the terms of the collective bargaining agreement. The employer, by following procedural rules, did not oust the court of jurisdiction.
If the employer had filed its responsive pleading and admitted possession of the fund in question, its origin, and set out the conflicting claims of the two unions, and asked to have Local IUE made a party plaintiff or defendant as a necessary party under Rule 19, there would have been no basis for a plea to the jurisdiction of the court. In another procedural form this is what the employer did.
Reasoning from the premise that the complaint alleged and there existed necessary jurisdictional facts when this cause was commenced, to hold the court lost jurisdiction on filing of the interpleader answer under the procedural rules, or that the relief was granted in part under separate assignments of the employees, would result in a holding that by procedural processes only, or by a judgment on the merits, the court lost jurisdiction in this case. Such a holding would be contrary to Rule 82. That the issues decisive of the rights of the parties plaintiff and interpleaded may have been framed in a pleading between the two unions, outside the Taft-Hartley Act, is not the controlling factor in this case. No such record is presented.
The cases cited by defendant Local IUE are not in point. In Sun Shipbuilding & Dry-Dock Co. v. Industrial Union, D.C., 95 F.Supp. 50, the employer did not retain the check-off dues until it found itself violating its collective bargaining agreement, but on the controversy arising between two unions as to which one was entitled to check-off dues initiated an interpleader action under 62 Stat. 931, 28 U.S.C.A. § 1335. Snoots v. Vejlupek, D. C., 87 F.Supp. 503, presented solely an inter-union controversy based upon allegations of "violation of a union constitution", and not a collective bargaining agreement. In Kriss v. White, D.C., 87 F.Supp. 734, 735"The material allegations of the complaint and the prayer for relief are confined within the framework of a single union structure"and no contract between a union and an employer was involved.
We think the defendant Local IUE in error on the law controlling jurisdiction under the record in this case. If the court acquires jurisdiction over the case in the first instance, and we hold it did, it retains jurisdiction to dispose of all questions properly brought before the court.
In Brelsford v. Whitney Trust & Savings Bank, 5 Cir., 69 F.2d 491, 492, plaintiffs, in an action in the lower court against the United States and one Brelsford, sought to determine the status of a recorded tax lien of the United States on some property owned by Brelsford on which plaintiffs held a mortgage. The United States was made a defendant pursuant to 26 U.S.C.A. § 136(b), (recodified in *685 sections 1568 and 1569 of the U.S.Code of 1934 now 26 U.S.C.A. §§ 3678, 3679). Pending the action Brelsford paid the lien. This was set up in the Government's amended answer and the Government disclaimed any further interest in the land and consented to the suit proceeding ex parte so far as it was concerned. Brelsford then answered that the action should be dismissed for lack of federal jurisdiction, claiming that after the lien was satisfied and the United States disclaimed any further interest in the controversy, Section 80 of 28 U.S.C.A. required dismissal, since it appeared that "such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said district court." The court held that jurisdiction was not defeated. The United States remained a party within the meaning of article 3, § 2 of the Constitution. The court said, "Federal jurisdiction in such a connection depends on the state of facts when the suit is filed, and is not lost by a change in the facts afterwards."
In Siler v. Louisville & Nashville R. Co., 213 U.S. 175, 29 S.Ct. 451, 454, 53 L.Ed. 753, the plaintiff railroad filed a bill in the Federal trial court to enjoin the enforcement of an order of the state railroad commission on the ground that the order violated provisions of the federal Constitution, and on the further ground that the commission did not have the power to make the order under the proper construction of the state statute under which the commission acted. The Supreme Court held, there being Federal questions raised the court had jurisdiction to decide the state questions, even if it did not decide the Federal questions. The rule was stated as follows:
"The Federal questions as to the invalidity of the state statute because, as alleged, it was in violation of the Federal Constitution, gave the circuit court jurisdiction, and, having properly obtained it, that court had the right to decide all the questions in the case, even though it decided the Federal questions adversely to the party raising them, or even if it omitted to decide them at all, but decided the case on local or state questions only."
The rule is followed in Lincoln Gas & Electric Light Co. v. City of Lincoln, 250 U.S. 256, 39 S.Ct. 454, 63 L.Ed. 968 (validity of occupation tax on gas companies challenged) and Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (suit for copyright infringement joined with claim for unfair competition under state law).

Order
Consolidated motions of interpleaded defendant to set aside judgment, to dismiss complaint, and for new trial, are overruled.
NOTES
[1] Plaintiff will be referred to as "Local UE"; defendant as "employer"; and interpleaded defendant as "Local IUE".
[2] Which we will refer to as the "UE national".
[3] Which we will refer to as the "CIO".
[*] Here we have taken the highest estimate present and assume half of them voted for the motion. Since the members present were estimated as low as 1500 we are aware this is giving Local IUE a gross benefit of the record.
[**] We find no record on total of this group entitled to vote.
[1] The following designations are the same as in original memorandum filed in this case: * "Local IUE"; ** "Local UE"; *** "Employer".