Local 464 American Bakery and Confectionery Workers International Union, AFL-CIO *v.* Hershey Chocolate Corporation (et al., Appellant).

Argued November 17, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*William Fearen,* with him *Nissley, Cleckner & Fearen,* for appellants.

*Bernard N. Katz,* with him *Meranze, Katz & Spear,* for appellee.

OPINION BY MR. JUSTICE BOK, March 23, 1961:

The plaintiff local union sued the employer for dues which the employer checked off under authority of individual assignments and retained because of this controversy. Since 1939 plaintiff had a collective bargaining agreement concluded with defendant solely by the union's own officers. This agreement was due to expire on the last day of 1958, and nominated plaintiff as the bargaining representative of the employes.

Plaintiff's complaint in equity alleged the following facts:

Plaintiff was first affiliated with the Bakers & Confectionery Workers International Union, hereinafter called the BCW. As a result of hearings by the United States Senate into allegations of improper conduct, BCW was suspended and later expelled from

AFL-CIO, which at the same time created a replacement, the American Bakery & Confectionery Workers International Union, hereinafter called the ABC. Plaintiff voted to disaffiliate from BCW and to join and give all its rights to ABC, and on December 30, 1957, the new affiliation was completed. Thereafter defendant was notified of the change. Plaintiff has continued to deal with defendant, to represent its employes, and to administer the collective bargaining agreement.

In January, 1958, the defendant employer filed with the National Labor Relations Board a petition concerning representation, and, after hearing, an election was held, which plaintiff won. It was accordingly certified by the board as bargaining agent. Plaintiff and defendant then executed a contract supplementary to the collective bargaining agreement and confirming it.

The employer also filed a petition to interplead BCW, which had demanded the checked-off dues, and not only was allowed by order of the court below to retain these dues in a special account but was discharged from liability to either ABC or BCW.

BCW, as interpleaded claimant, filed its statement of claim, to which ABC filed an answer. The fund represents dues checked off during the months from January through October, 1958, which is the period between plaintiff's affiliation with ABC and the certification of plaintiff by the National Labor Relations Board as the bargaining representative, and totals $63,404. Both the international and local 464 claim this fund.

Plaintiff then moved for judgment on the pleadings, and the court below ultimately granted it. The BCW, as interpleaded claimant, has appealed.

What we are passing upon is the right to the accumulated dues during the period in which it took

the NLRB to decide the case. Up to then the right to retain assets was given to plaintiff by our decision in *Alvino v. Carraccio*, 400 Pa. 477 (1960), 162 A. 2d 358, involving the same employer, the same internationals, and two different locals. We said, at p. 485: "Accordingly we hold that upon the expulsion of BCW the constitutional obligations binding the locals to it were abrogated; that the loyal locals had the right to secede and disaffiliate; and that they had the further right to retain their assets." See also *Olson v. Carbonara*, 21 Ill. App. 2d 69 (1959), 157 N.E. 2d 273, 43 LRRM 2778.

It is argued that it would be odd, having held that one in plaintiff's position was entitled to keep its assets before disaffiliation, now to hold that it might not keep them after disaffiliation. There is of course no question of its right to keep them after certification as bargaining agent.

The situation of the BCW International and of local 464 is set out in *Hershey Chocolate Corp.*, 121 NLRB 901, 42 LRRM 1460 (1958), where the National Labor Relations Board said: "ABC Local 464 has assumed administration of the contract and except with respect to checked off dues which are involved in State Court litigation and are being held in escrow by the employer, the change in affiliation has apparently produced no change in the bargaining relationship with the employer. . . .

"At the time of the disaffiliation action, there were about 2800 employees in the unit, of whom about 2000 were members of the BCW local 464; of these 2000 about 1700 had executed check off authorizations. The local officialdom consisted of 12 officers, about 50 executive board members and about 92 departmental representatives. Following the disaffiliation action, all the officials except one officer and two or three departmental representatives continued in office as officials of

ABC Local 464, and about 1350 employees executed new check off authorizations in favor of ABC Local 464. ABC Local 464 has assumed administration of the contract."

The pleadings in the record before us assert and deny, through the orator's being without knowledge, the number of new check-off authorizations in effect during the period in question. Even the *Hershey* opinion above quoted refers to "about 1350". The doctrine of contractual frustration referred to in *Alvino* applies between the local and its international, but we see no warrant for applying it to members who execute an irrevocable one-year assignment: *Local 1104 v. Wagner Electric Corp.*, 109 F. Supp. 675 (1952), where the Court said: "The funds do not arise from any contract between Local 1104 and the employer regardless of who the local now is. They result from individual authorizations of the employees—a contract between each employee and the employer subject to cancellation by the employee."

On December 29, 1960, the National Labor Relations Board decided the cases of *Hershey Chocolate Corp. and Powell & Landvater, & Local 464, ABC, & Powell & Landvater*, 129 NLRB No. 126, holding that Local 464 ABC and Local 464 BCW are separate and distinct entities; that under a maintenance of membership clause employes could not be forced to pay dues to Local 464 ABC merely because they had once paid them to Local 464 BCW; and that both the union and the employer had been guilty of unfair labor practices.

Thus, as for the employes who checked off in favor of some entity other than Local 464 ABC, presumably Local 464 BCW, to affirm payment of the entire fund to plaintiff without observing the rights of those who directed that their dues be paid otherwise would be to aid an unfair labor practice and to deprive them of

their property without due process of law. So long as Local 464 BCW was not defunct and was a different entity from Local 464 ABC, as the NLRB has found, we cannot assume that the employes who continued their check-offs in favor of Local 464 BCW had any sinister or improper purpose in doing so: they may have wanted to try to set their old house in order. Members of Local 464 BCW did not automatically become members of Local ABC after the schism and would not be forced to pay dues to it: *Hershey Chocolate Corp.*, 121 NLRB 901; *Montgomery Ward*, 121 NLRB 1552.

With regard to these alleged BCW check-offs, it is not unlawful for an employer to pay, or for a representative of his employes to receive, money deducted from the wages of employes in payment of membership dues in a labor organization, provided the employer has received from each employe on whose account such deductions are made a written assignment which shall not be irrevocable for a period of more than one year or beyond the termination date of the applicable collective agreement, whichever occurs sooner. 29 U.S.C.A. 186('c) (4) refers to payments to "labor organizations" and there is nothing to indicate that to save such payments from illegality such organization need be the labor organization that is the collective bargaining representative. Indeed, "labor organization" equals "representative" equals "any individual or labor organization": *U. S. v. Ryan*, 350 U. S. 299, 76 S. Ct. 400 (1956), footnote 5. Local 464 BCW is "any" labor organization.

However, the terms of the authorization do not appear of record. They may have terminated when Local 464 BCW ceased administering the collective agreement. Furthermore, the authorizations may have run to Local 464 BCW, AFL-CIO, a designation which admittedly fits no one, and which, as this Court said

in *Alvino,* supra, (400 Pa. 477), is a "basic" consideration. In this situation there would be a resulting trust and equity would dictate that the money involved be returned to the employes or their estates.

With regard to the alleged 1350 new authorizations running to Local 464 ABC, AFL-CIO, it does not appear of record how many, if any, have been received by the employer, so that money held under them could be legally paid over. To order payment to plaintiff without such receipt would appear to be a violation of the above mentioned Federal law, in which case the only appropriate thing to do would be to order the return of the money to the employes or their estates.

These various questions cannot be decided upon the present record.

The order of the court below is reversed and the record is remanded for further proceedings consonant with this opinion. Costs to be paid equally by appellant and appellee.