## Local 464, American Bakery and Confectionery Workers International Union v. Hershey Chocolate Corporation

*B. N. Katz,* for plaintiff.

*W. Fearen, G. Nurick* and *D. M. Savitt,* for defendant.

*Peter H. Olson,* for interpleader claimant.

DOTY, J., April 10, 1963.—This matter is presently before the court for determination of whether plaintiff Local 464, American Bakery and Confectionery Workers International Union, AFL-CIO, hereinafter referred to as ABC, or the interpleader claimant, Bakery and Confectionery Workers International Union of America, hereinafter referred to as BCW, is entitled to a fund in the amount of $63,404 with interest, representing union dues "checked off" by defendant employer during the period from December 28, 1957, through October, 1958, which is the period between plaintiff's affiliation with ABC (following its disaffiliation from BCW) and the certification of plaintiff by the National Labor Relations Board as the sole and exclusive collective bargaining agent for defendant's employes. Defendant did not actively contest and took the position of a stakeholder.

The preliminary history of this litigation has been set forth at length in a previous opinion of this court dated February 5, 1960, and the opinion of the Pennsyl-

vania Supreme Court dated March 23, 1961, and reported in 403 Pa. 44 (1961). Therefore, it would serve no useful purpose to recite this history again. Suffice to say that following the decision of the Supreme Court, which remanded this case for further proceedings, a hearing was held at which time extensive testimony was taken.

This testimony concerned the organization of Local 464, both prior to and after its disaffiliation from BCW, its activities on behalf of its members both prior to and after disaffiliation from BCW, representation of its employes in collective bargaining procedures, check-off authorizations which it obtained from its members and deposited with defendant prior to its disaffiliation from BCW, and new check-off authorizations which it obtained from its members following its disaffiliation from BCW, etc. The interpleaded claimant introduced testimony of its attempt to set up a local union affiliated with it after December 28, 1957, and its activities in connection therewith during the period in question . . .

## Discussion

Local 464, an unincorporated association, was and is a local labor union which prior to December 28, 1957, was affiliated with the Bakery and Confectionery Workers International Union which, in turn, was affiliated with the AFL-CIO. This local union functions solely on a local basis and had entered into a collective bargaining agreement with defendant Hershey Chocolate Corporation, the employer of its members, on March 26, 1957. This collective bargaining agreement was, by its terms, to be in effect until December 31, 1958. The sole functions served by the International Union (BCW) was to provide strike benefits in event of a strike and to be the machinery through which a local union could obtain affiliation with the International AFL-CIO.

Under the terms of the collective bargaining agreement and by written authorization of the employe, defendant employer agreed to retain a check-off from wages paid its employes the sum of $3.50 per month, representing dues which these employes owed to Local 464, their local labor union. Under the terms of the constitution of BCW, and its agreement with Local 464, the local was obligated to transmit to its international a portion of its income from dues as a per capita tax. It must be emphasized that BCW had no claim either against defendant or against the individual employes whose dues were checked off; its sole claim was against the local union which was affiliated with it. Prior to December 28, 1957, 1,724 members of Local 464, who were employes of defendant, had executed dues check-off authorizations which had been lodged with defendant.

As a result of the suspension of BCW from the AFL-CIO, Local 464 validly disaffiliated from BCW. This disaffiliation followed a vote of 42 to 1 by the local's executive board, and a vote by the entire membership of 821 and 1 in favor of disaffiliation from BCW. This disaffiliation became effective on December 28, 1957. Thereafter, Local 464 became affiliated with ABC, AFL-CIO.

Local 464 continued to be exactly the same entity after December 28, 1957, as it had been before that date. Its address and telephone number remained the same. The officers, with the exception of the recording secretary,[1] continued to function under the new affiliation in the same manner as they had under the old. The president, the business agent, and the various committees, all continued to function for Local 464, ABC, as

---

[1] This recording secretary remained with plaintiff for a period of three weeks after which she left plaintiff and was employed by the interpleaded claimant.

they had for Local 464, BCW. The by-laws remained the same. Not only did Local 464 continue to function in the same manner internally after December 28, 1957, but the same identity was continued in its dealings with defendant. All functionaires of the local continued their collective bargaining obligations with the employer under the existing collective bargaining agreement.

As stated previously there had been on file with defendant 1,724 check-off authorizations which authorized the company to withhold monthly from the wages of each of these employes the sum of $3.50 per month. In or about the middle of January, 1958, the precise date is not a matter of record, Local 464 obtained from 1,344 of its members new check-off authorizations which revoked the check-off authorizations previously executed providing for payment of the dues to Local 464, BCW, and authorized the check-off and payment of dues to Local 464, ABC. Plaintiff local attempted to file these authorizations with defendant which refused to accept the new check-offs and advised the local that until there was a court order authorizing the transmission of the check-off money it would continue to deduct the dues, but would hold them in escrow.

BCW attempted to set up another local in Hershey. However, it is clear from the record that the membership of that local was very small and this organization met with no success in weaning away members of the old Local 464. There is no evidence that it ever conducted any substantial negotiations with the employer on behalf of the employes. However, BCW did make demand upon defendant for the check-off money.

As a result of the conflict between Local 464 and its former international, Hershey Chocolate Corporation filed with the National Labor Relations Board a representation petition which set forth that there were conflicting claims and requested that the National

Labor Relations Board take action on this petition. On September 18, 1958, the board issued its decision and directed that an election take place.

In October, 1958, a National Labor Relations Board election was held and the new local was decisively defeated. When the results of the election were officially accepted, the old Local 464 was officially recognized by the National Labor Relations Board as the bargaining agent for defendant's employes. See 121 NLRB 124, 42 LRRM 1460. The new local affiliated with BCW was disbanded. Therefore, there is now no local group affiliated with BCW to represent the employes of Hershey Chocolate Company. If the interpleaded claimant was successful in this case, the fund in question would not inure to the benefit of those employes who, through check-offs, had contributed to the fund, but rather the fund would go to the international organization which does not, and cannot, represent the employes of defendant since there is no local union affiliated with it.

On October 23, 1958, plaintiff and defendant entered into a supplementary collective bargaining agreement under which it was agreed that the terms and conditions of the prior collective bargaining agreement would continue in full force and effect as if plaintiff local was an original signatory thereto.

After certification of plaintiff local as the collective bargaining agent of defendant's employes, defendant agreed that it would accept the check-offs which had been executed in January, 1958, provided that these authorizations were reaffirmed by the signatories. Thereafter, 1,223 of the employes, who had executed the check-offs in January, 1958, reaffirmed their authorizations and these were deposited with the company.

Subsequent to October, 1958, plaintiff local also obtained new authorizations from 338 additional employes and these were filed with defendant.

After its certification by the National Labor Relations Board, Local 464 attempted to bring its dues income up to date; not all of its members had been on the dues check-off basis. Some three or four hundred of its members had customarily paid their dues directly to the union office and some had failed to pay their dues for all or part of the period from January through October, 1958. Accordingly, plaintiff local took steps to enforce the maintenance of membership clause against a number of these people and under the collective bargaining agreement sought to have them discharged from defendant's employ. Defendant refused to discharge these employes and, as a result, the question of whether or not they were required to pay dues to Local 464 in its new international affiliation was submitted to arbitration under the collective bargaining agreement. The arbitrator held that these persons were required to pay all of their back dues to plaintiff local and that Local 464, ABC, was in fact the continuing identity of Local 464, BCW.

The company and plaintiff local took the proper steps to enforce the award which resulted in unfair labor practice charges being filed. The National Labor Relations Board found that an attempt to enforce the back dues against individuals who had never affirmatively joined Local 464, ABC, was an unfair practice: Hershey Chocolate, Incorporated, and Local 464, ABC, 129 NLRB No. 126.

The National Labor Relations Board decision was appealed to the United States Court of Appeals for the Third Circuit. That court held that Local 464, ABC, was the continuing identity of Local 464, BCW, and as such was entitled to enforce all of the rights it had prior to its new affiliation and which it would have had but for this affiliation: NLRB v. Hershey Chocolate Corporation, 297 F. 2d 286, 291 (1961).

The court stated, inter alia:

"From all the evidence it must be concluded that the choosing of a new international and indicating that relationship in its name was not a secession movement from the old local. It was merely the local's members acceptance of the bitter truth that though they and their organization were innocent there was no viable future for them with the BCW International.

"The old union has not disappeared. Throughout the entire critical time it has operated as the Hershey employees bargaining unit without interruption and successfully. Nor has that operation been in competition with a rival union. There is no substantial evidence in the record which would justify the conclusion that there is other than a paper BCW local at Hershey."

The impact of this decision was to require all defendant's employes who had been members of Local 464 prior to the disaffiliation to maintain their dues-paying status for the period January to October, 1958, and on to the present time. The United States Court of Appeals decision was not appealed from and is now final. Meanwhile, in December, 1958, this present suit was instituted. A motion for judgment on the pleadings was granted by this court in favor of plaintiff and the entire fund in controversy awarded to Local 464. However, on appeal the Supreme Court remanded the case to this court for further proceedings consonant with its opinion: 403 Pa. 44 (1961).

The question before this court is to whom and to what extent this fund in controversy should be awarded. It is clear at the outset that the interpleaded claimant is not entitled to any part of the funds in question. As the Pennsylvania Supreme Court held in its opinion in the instant case, no moneys may be paid to a labor organization under a check-off system unless there is in existence at the time in question a valid check-off authorization which authorized the employer to deduct dues from the wages of its em-

ployes and pay over these dues to a particular labor organization.

The original 1,724 check-offs on file with defendant did not provide for payment to the interpleaded claimant but to Local 464, BCW. Therefore, the interpleaded claimant was not entitled to any moneys so checked-off. During the period in question there was no Local 464, BCW, in existence. Since in no event did any check-off authorizations ever run in favor of the interpleaded claimant, it cannot be entitled to moneys checked-off by defendant.

In Alvino v. Carraccio, 400 Pa. 477 (1960), a case involving the same interpleaded claimant and a different local, our Supreme Court held that the local union had the right to secede and disaffiliate from the interpleaded claimant, and also had the further right to retain its assets. Upon valid disaffiliation the agreement between the local union and the international which imposed certain requirements upon the local was abrogated and rendered null and void and the local union was no longer under any duty to the international from which it had validly disaffiliated. Specifically, our Supreme Court held, with respect to the effect of the agreement between the interpleaded claimant and the local union, that the doctrine of frustration of contractual purpose was applicable. Therefore, plaintiff has no obligation to the interpleaded claimant (BCW) from which it validly disaffiliated and for this reason plaintiff is no longer obligated to remit to the interpleaded claimant any portion of the check-off moneys covering the period in question which it receives.

We next turn to the claim of plaintiff which asserts that it is entitled to the entire fund in question. Plaintiff local maintains that it is a continuing entity; that it is precisely the same entity that it was prior to disaffiliation, except for its new international affiliation.

This was the result reached by the United States Court of Appeals for the Third Circuit in the case of NLRB v. Hershey Chocolate Corporation, supra, and we also conclude that this is a fact.

As stated previously, in January 1958, plaintiff local obtained new check-off authorization from 1,344 of its members who were employes of defendant and attempted to file these check-offs with defendant, which refused to accept them. Thereafter, in October 1958, following certification by the NLRB of plaintiff local as the sole and exclusive collective bargaining agent for defendant's employes, defendant agreed to accept the check-off authorizations which had been tendered to it in January, 1958, provided they were reaffirmed by the individuals. At that time, 1,223 of these check-offs were reaffirmed by the individuals, and deposited with defendant. We think plaintiff is clearly entitled to the moneys checked off by defendant for the period in question out of the wages of the 1,344 employes who executed valid check-off authorizations in January 1958. While defendant had the right to refuse to accept these authorizations initially, plaintiff local, in the light of subsequent development, had the right to obtain them and utilize them since it was ultimately certified as the collective bargaining agent for defendant's employes.

Moreover, defendant and plaintiff local entered into a supplementary collective bargaining agreement on October 23, 1958, under which it was agreed that the terms and conditions of the prior agreement between defendant and the local in its previous affiliation would continue in full force and effect as if plaintiff were the original signatory thereto. Therefore, plaintiff is entitled to the benefit accruing to it as a result of the check-off authorization which it obtained in January 1958, which it tendered to defendant and which, in the light of subsequent decisions, it had the right to have

filed with defendant. Therefore, we hold that plaintiff is entitled to the sums which were deducted by defendant as check-off of union dues from the wages of the 1,344 employes during the period from January 1958, through October 1958.

We are also of the opinion that plaintiff is entitled to the balance of the fund in controversy. The evidence is clear that in January 1958, when plaintiff obtained the 1,344 check-off authorizations and attempted to file them with defendant, it ceased its attempt to obtain any additional authorizations because defendant refused to accept the 1,344 which plaintiff had obtained. Plaintiff union felt, and rightly so, that it would have been fruitless and useless to obtain additional authorizations since defendant was not accepting any such authorizations unless and until plaintiff was certified by the National Labor Relations Board as the collective bargaining agent for defendant's employes.

When plaintiff did receive such NLRB certification it promptly obtained 338 additional check-off authorizations which, from the record, it is clear it could have obtained during the period in question.

Therefore, we do not think plaintiff should be penalized because of the delay in the judicial or quasi-judicial process, from the time of its disaffiliation until its certification by the National Labor Relations Board.

In addition, it is clear and the United States Court of Appeals found that plaintiff in October 1958, and to date, is precisely the same entity it was just prior to its disaffiliation from the BCW on December 28, 1957, with all of the rights which it had at that time. Under these circumstances we believe that the check-off authorizations which ran in favor of Local 464 in its prior affiliation should be construed to run in favor of Local 464 in its new affiliation and that the validity of these 1,724 check-off authorizations is not affected by the mere change of Local 464's international affiliation.

Indeed, defendant so recognized the continuing identity of plaintiff when, in October 1958, it reaffirmed the collective bargaining agreement executed on March 26, 1957, between it and Local 464 in its prior affiliation and agreed that that collective bargaining agreement would remain in full force and effect as if Local 464, ABC, had been the original signatory thereto.

In its opinion in this case, the Pennsylvania Supreme Court referred to and placed great stress upon the NLRB's decision which held that plaintiff's attempt to enforce the payment of delinquent dues by certain employes to defendant was an unfair labor practice (129 NLRB No. 126), and gave no recognition to the fact that Local 464, ABC. is the continuing entity of Local 464, BCW.

We are, of course, aware that in the opinion of the late Justice Bok of the Pennsylvania Supreme Court, the decision of the NLRB was referred to as authority for the separate and distinct entities of the two local unions. However, subsequent to Justice Bok's opinion, the National Labor Relations Board was reversed by the United States Court of Appeals, supra, which held that Local 464, ABC, was the same as Local 464, BCW, and, after consideration of the additional testimony taken before this court in the present proceedings, we are of the opinion that the continuing entity of plaintiff local has been established.

We see no purpose in awarding the dues checked-off for the 338 members back to the members themselves and thereby subjecting them to union penalty for failure to pay dues, nor to require plaintiff union to reassess these same members for the same dues and collect them again. Equity regards that as done which should have been done: Schaeffer v. Herman, 237 Pa. 86 (1912); Stark v. Lardin, 133 Pa. Superior Ct. 96 (1938). The dues in question which have been checked-off are due plaintiff union in accordance with the de-

cision of the United States Court of Appeals, which is the final arbiter on this point.

For this reason, we will award the dues checked off for the 338 employes who executed check-off authorizations subsequent to October 1958 to plaintiff, together with the dues checked off for the 1,344 employes pursuant to check-off authorizations executed in January 1958.

For this reason also, we will award to plaintiff any dues checked off from the wages of the remaining 42 employes of defendant, who originally executed check-off authorizations, as part of the original 1724, but who never subsequently executed another such authorization.

Therefore, we conclude that plaintiff is entitled to the entire fund with all accrued interest, and we make **the following**

### *Conclusions of Law*

1. Plaintiff local union was and is an autonomous local union.

2. Plaintiff local union had the right to and properly disaffiliated from interpleaded claimant's international union on December 28, 1957, because of the alleged corrupt and unethical practices of certain officers of said union and because said union lost its affiliation with the AFL-CIO.

3. Plaintiff local union is identical to and is the contracting party to the collective bargaining agreement with defendant, Hershey Chocolate Corporation, which was in effect during all of the period in question in the instant case.

4. Plaintiff Local 464 has continued until the present time to exist and function in the same manner as it had prior to its disaffiliation, the sole change being in international affiliation.

5. Plaintiff local union is entitled to all of the dues

checked off by defendant during the period from December 28, 1957, through October 1958.

6. Interpleaded claimant is not entitled to any of the funds representing dues checked off by defendant for the period from December 28, 1957, through October 1958.

Therefore, in accordance with the foregoing, we enter the following

*Decree Nisi*

1. Defendant Hershey Chocolate Corporation shall pay to plaintiff the sum of $63,404, together with all interest accrued thereon at the rate of two percent per annum from January 5, 1959, which is the date this court ordered defendant to retain the money in controversy as custodian for the court.

2. The interpleaded claimant is not entitled to any moneys held by the Hershey Chocolate Corporation in its account no. 3 in the Hershey National Bank, Hershey, Pennsylvania, representing moneys checked off by defendant from December 28, 1957, through October 1958. Therefore, the claim of the interpleaded claimant is dismissed.

3. Each party to these proceedings is to pay its own costs.

The prothonotary is directed to enter this decree nisi, and to give notice thereof to the parties or their counsel of record, and unless exceptions are filed within 20 days thereafter, this decree nisi shall become the final decree, as of course.