SEAFARERS INTERNATIONAL UNION OF PUERTO RICO, Petitioner, v. PUERTO RICO LABOR RELATIONS BOARD, Respondent; PUERTO RICO MARBLE INDUSTRIES, INC., and ROYAL CROWN BOTTLING CO. (OF PUERTO RICO), INC., Interveners.

No. JRT-66-3.    Decided June 12, 1967.

*Manuel de Jesús Mangual* for petitioner. *J. B. Fernández Badillo, Solicitor General, J. F. Rodríguez Rivera, Acting Solicitor General, Luis M. Rivera Pérez, Marta Ramírez de Vera,* and *Celia Canales de González* for respondent. *Cohen & Lespier,* and *Harold Toro Toro* for interveners.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Santana Becerra, and Mr. Justice Dávila.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

On July 29, 1963, the Royal Crown Bottling Co. (of Puerto Rico) and Unidad General de Trabajadores de Puerto Rico (U.G.T.) affiliated with the United Brewery Workers of America (AFL-CIO), Local 611 signed a collective bargaining agreement, in its name and in representation of their local Unión de Trabajadores de la Industria Gaseosa de la Royal Crown Bottling Co. (of Puerto Rico). In Art. V of the agreement it was agreed that the Company would deduct from the wages of the employees covered by it and who had given their consent, the weekly checkoff dues and initiation fees owed by the employees as members of the Union and it would deliver the amount deducted each week in a check payable to "Unidad General de Trabajadores de Puerto Rico (U.G.T.) affiliated with United Brewery Workers of America (AFL-CIO) Local 611."

As of April 8, 1963 the National Labor Relations Board had certified U.G.T. affiliated with United Brewery Workers of America as the representative of these workers. On April 7, 1964 U.G.T. disaffiliated from Brewery Workers and affiliated with the Seafarers International Union of North America, A.G.L.I.W. District, P.R. Division AFL-CIO (S.I.U.). The National Board amended the certification originally issued to reflect U.G.T.'s new affiliation.

On April 7, 1964 Unidad de Trabajadores de Bebidas Refrescantes Royal Crown Bottling Co., Unidad General de Trabajadores de Puerto Rico (U.G.T.) and Seafarers (S.I.U.) appeared and agreed to instruct the Company and the companies with whom they had collective bargaining agreements in force that the dues deducted from the workers' wages in each company be remitted by check payable to the order of "Unidad General de Trabajadores de Puerto Rico affiliated with Seafarers International Union of North America, Atlantic, Gulf, Lakes and Inland Water District, Puerto Rico Division", at 1313 Fernández Juncos, Stop 20, Santurce. They

stated that said instruction agreement was made considering that the S.I.U. had assumed the direct responsibility of rendering all the services to the workers and of promoting their interests under the collective agreement in force.

On September 3, 1964 the parties to the former collective bargaining agreement of July 29, 1963 agreed to amend and amended the appearance of the parties to the agreement to reflect the new affiliation of Unidad General de Trabajadores with S.I.U., and amended Art. V in order that the Company would issue weekly the check for the deductions made to the employees, to "Unidad General de Trabajadores de Puerto Rico (U.G.T.) affiliated with Seafarers International Union of North America-Puerto Rico Division." The collective bargaining agreement with Royal Crown was thus amended.

On January 20, 1965, Puerto Rico Marble Industries, Inc., and Unidad General de Trabajadores de Puerto Rico thus affiliated with S.I.U. signed a collective bargaining agreement in which, in its Art. V, they agreed upon the weekly deduction of checkoff dues by the Company, and that the amount of said deduction would be delivered monthly by the employer in a check payable to "Unidad General de Trabajadores de Puerto Rico (U.G.T.) affiliated with Seafarers International Union of North America, A.G.L.I.W. District, P.R. Division, AFL-CIO."

In or about the month of June 1965, U.G.T. and S.I.U. disagreed. Both appeared before the National Board requesting amendment of the certification. S.I.U. adduced evidence that the workers of the units represented had voted for disaffiliation from U.G.T. and affiliation with S.I.U. The U.G.T., on its part, opposed the S.I.U.'s petition and claimed the exclusive right to represent the units involved, on the ground that its affiliation with S.I.U. in 1964 had been merely a business agreement.

On September 20, 1965 the National Board dismissed both petitions because it believed that the petitions constituted

attempts to raise questions concerning representation proscribed at that time by the "election year" rule of § 9 (c) (3) of the Act. The Board rejected the argument of U.G.T. to the effect that its affiliation with S.I.U. had merely been a business agreement. On the other hand it stated that according to the record U.G.T. continued to be the certified representative notwithstanding its affiliation with S.I.U., that said Union existed and was still claiming to represent the units covered by the certifications. The S.I.U. appealed before the Board from this decision of the Regional Director dismissing both petitions, that of the S.I.U. and that of U.G.T.[1]

Under the circumstances described, what was expected occurred. U.G.T. as well as S.I.U. claimed separately from employers Royal Crown and Marble Industries to pay each one, to the exclusion of the other, the dues deducted.

On October 7, 1965 Royal Crown appeared before the respondent Board, set forth the situation and requested, in discharge of its responsibility, that the Board order the two Unions to claim and interplead, before the Board, their respective rights to the amounts involved, which at that moment the employer was depositing or would deposit in the future. Royal Crown alleged that our decision in *Labor Relations Board* v. *Metropolitan Bus Authority*, 91 P.R.R. 484 (1964) had deprived it of the classical remedy of interpleader in situations like these, with the corresponding deposit. The Board, on October 8, 1965, dismissed the petition because there was no case before it.[2]

---

[1] The record does not show any action on the part of the National Board at the time that the Board, respondent herein made the decisions subject to review, nor at this time.

[2] Notwithstanding our expression in *Labor Relations Board* v. *Metropolitan Bus Authority* to the effect that the Board was vested with jurisdiction to "avoid and remedy unfair labor practices" and the ample tutelage power over labor relations granted to it by law, as a result of its action dismissing the petition of Royal Crown as well as of its state-

Despite the foregoing, the Board subsequently authorized charges of unfair practice against both employers for violation of the respective collective bargaining agreements, under § 8(1)(f) of the Puerto Rico Labor Relations Act. The employers filed charges against each Union, also for violation of the collective agreement inasmuch as each one claimed the dues for itself.

A Trial Examiner, after the proper hearing, acquitted the Unions, and found the employers guilty of unfair labor practices in violating the agreements, although he specified that it was a technical violation. The Trial Examiner recommended that the employers pay the dues withheld to U.G.T. The Board so ordered. In this petition the S.I.U. challenged the validity and correction of said Order. Let us see:

In the case of Royal Crown, the Trial Examiner concluded:

"3. Unidad General de Trabajadores de Puerto Rico is the exclusive representative of the production and maintenance employees employed by Royal Crown Bottling Company in the Commonwealth of Puerto Rico. Its status as representative has not been affected by the incidents of disaffiliation of United

---

ments in the course of the hearing, the Board assumes the firm position that it lacks power to remedy a situation like this. Whether in such case, the Board refusing to take action, the employer may resort to the classical judicial action of interpleader, *Quaere*; although perhaps it would not be the most desirable. Under these circumstances, and in the absence of remedies, an employer is bound to confront a charge of unfair practice and to defend himself thereof, or otherwise take the risk of paying twice.

Similar situations have occurred in other places. *Cf. Glove Workers Union* v. *Wisconsin Board*, 45 L.R.R.M. 2731, 2736, where it was held that despite dismissing the complaints, the Wisconsin Board had power to dispose of the checkoff funds, under its power to interpret the collective bargaining agreement; *Local 464, ABC* v. *Hershey Chocolate*, 47 L.R.R.M. 2841, *Local 464, American Bakery, etc.* v. *Hershey Choc. Corp.*, 169 A.2d 54 (Pa.), where it was held that a proper remedy before the situation was to return the deductions made to the employees. *Cf. Comunidad Agricola Bianchi* v. *Labor Relations Board*, 92 P.R.R. 665 (1965).

Brewery Workers and affiliation and disaffiliation of Seafarers International Union.

"4. The Federal Board having concluded that the incidents of affiliation and disaffiliation between Unidad General de Trabajadores and Seafarers International Union did not affect the status of UGT, employer Royal Crown Bottling Company was bound to remit to said labor organization the check-off dues of its production and maintenance employees.

"5. Upon failure to remit the dues to UGT, which was the certified representative, employer Royal Crown Bottling Company violated the collective bargaining agreement and consequently committed an unfair labor practice within the meaning of the Act, 29 L.P.R.A. 69(1)(f)."

He made similar conclusions in the *Marble* case.[3]

There is no controversy as to the fact that these employers are engaged in interstate commerce. It should be clear that everything concerning representation and affiliation is within the province of the National Board. *Bethlehem Co.* v. *State Board*, 330 U.S. 767; *La Crosse Tel. Corp.* v. *Wis. Board*, 336 U.S. 18; *cf. San Diego Unions* v. *Garmon*, 359 U.S. 236; *cf. Switchmen's Union* v. *Board*, 320 U.S. 297, 303 *et seq.*

■ The above-copied conclusions of the Trial Examiner are erroneous as a question of law, because they misinterpret the decision of the National Board of September 20, 1965. This decision and another one of the same date as to another employer—Orange Crush of P.R. Inc.—are clear in the sense that the National Board refused to certify U.G.T. as exclusive representative of these laborers, and refused to certify S.I.U. as their exclusive representative. This was the decision of the National Board. The statement that U.G.T. appeared as the certified Union despite its affiliations first with Brewery Workers and then with S.I.U., made in argumentative manner in answer to the claims of S.I.U. to

---

[3] By order of this Court of October 28, 1966, we granted intervention to said employers in this petition.

be certified as representative to the exclusion of the former, does not have the legal effect attributed by the Trial Examiner that the Board had decreed the exclusive representation of U.G.T. It was inappropriate for the respondent Board to accept such conclusions. The error was clearly illustrated during the hearing by employers' counsel, in the light of the evidence.

Section 302 of the Labor-Management Relations Act, 61 Stat. 157, as amended, 29 U.S.C.A. § 186, states that it shall be unlawful for any employer to pay, lend, or deliver any money or other thing of value to any representative of any of his employees to any labor organization or any officer thereof, to any group of employees, and in other cited situations. Noncompliance with this section is punished as a misdemeanor with a fine of not more than $10,000 or imprisonment for not more than one year, or both. Section 302 provides however, that it shall not be applicable . . . (4) with respect to money deducted from the wages of employees in payment of membership dues in a labor organization, Provided, That the employer has received from each employee a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner.[4]

The employers made clear to the Board that if the recommendation of the Trial Examiner was imposed on them, they would be liable for criminal violation of § 302 of the Federal Act, which could occur. They made it known that the written authorizations they had of the employees for the checkoff, as required by said § 302, authorized the checkoff

---

[4] Act No. 17 of April 17, 1931, as subsequently amended, 29 L.P.R.A. § 175, proscribes withholding of wages except . . .

(d) When in a collective agreement entered into between an employer and an agent of his employees in an appropriate unit for collective bargaining, a check-off is stipulated.

in favor of U.G.T. affiliated with S.I.U., as it appears stipulated in the respective agreements, which also require the laborers' consent for the checkoff. If the employers had paid the dues to one of the two Unions, the act would have constituted a violation of the agreement as to the other, and a violation of the consent given under § 302. Ironically, the Trial Examiner's recommendation and the Board's Order that payment be made to one of the two Unions in a charge for violation of the agreement, have the same effect, that of violating the agreement as to the other. In order to protect the employer in a situation like this one against the criminal liability imposed on it by § 302 it was held in *Local 464, ABC* v. *Hershey Chocolate, supra,* that a means would be to return the dues withheld to the employees. *Cf. Grajczyk* v. *Douglas Aircraft Co.,* 210 F.Supp. 702 (U.S.C.D. - S.D.C.).

■■ Under the circumstances of the record it was inappropriate to find employers Royal Crown and Marble guilty of an unfair labor practice for violation of the agreements. Even so, within the proceeding, and as an incidental thing, the Board could dispose with respect to the payment of the dues. *Labor Relations Board* v. *Metropolitan Bus Authority, supra; cf. Glove Workers Union* v. *Wis. Board, supra.*

■ The manner of disposing was not correct. The order to pay exclusively to U.G.T., apart from its being contrary to the agreements, has the inevitable legal effect even though unintentional, of deciding a dispute concerning representation and affiliation of laborers in interstate commerce, effect which is contrary to law because the determination corresponds to the National Board, and without the respondent Board having before it, in the assumption that it had power therefor, the elements of evidence necessary to decide such dispute in favor of one of the claimants.

It is proper to rule that the employers involved herein did not violate their collective bargaining agreements with these Unions and to set aside the Order of the Board that the dues be paid to U.G.T. exclusively. The case is remanded in order that the Board order that the checks be issued to "Unidad General de Trabajadores de Puerto Rico (UGT) affiliated with Seafarers International Union of North America-Puerto Rico Division" as stated in Art. V, as amended, of the collective bargaining agreement of Royal Crown, and to "Unidad General de Trabajadores de Puerto Rico (UGT) affiliated with Seafarers International Union of North America, A.G.L.I.W. District, P.R. Division, AFL-CIO," as stated in Art. V of the collective bargaining agreement with Marble.

In case such labor organization has ceased to exist, the Board, within its prerrogatives and tutelage power over labor relations, may, with the intervention of the claimant unions, dispose of the funds and grant such remedies which are fair and reasonable in order to effectuate the purposes of the collective bargaining agreements entered into with these laborers, or it may prescribe that the unions obtain from the National Board the proper certification and a determination of their respective rights in accordance with § 302 previously mentioned, or it may adopt any other appropriate solution valid at law.

Judgment will be rendered accordingly.

